IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

THERESA M. ZEIGLER, Individually; )
THERESA M. ZEIGLER, as mother and )
next friend of MADISEN ZEIGLER, ) Case No. C01-3089MWB
 )
                Plaintiffs. )
 )
v. )
 )
FISHER-PRICE, INC. )
 )
                Defendant. )

**BRIEF IN SUPPORT OF DEFENDANT FISHER-PRICE, INC.'S
MOTION TO PRECLUDE PLAINTIFFS' EXPERT
BRUCE WANDELL FROM TESTIFYING**

## I. INTRODUCTION

Plaintiffs in this action seek to recover for property damage as a result of a fire that occurred on June 1, 2002. Allied Insurance has brought this action in the name of its insured, Theresa M. Zeigler, to recover amounts paid under the terms of Mrs. Zeigler's homeowner's insurance policy. Plaintiffs contend that the fire was caused by a Fisher-Price battery operated toy known as a Power Wheels.

## II. PLAINTIFF'S EXPERT BRUCE WANDELL MUST BE PRECLUDED FROM TESTIFYING UNDER FEDERAL RULES OF EVIDENCE 702, THE PRINCIPLES SET FORTH IN DAUBERT AND THE EIGHTH CIRCUIT CASES APPLYING DAUBERT AND ITS PROGENY

    **a)**     <u>**Daubert and its Progeny**</u>

Under Rule 702 of the Federal Rules of Evidence, expert testimony is admissible if the exert is qualified, if the testimony will assist the trier of fact and if the testimony meets three requirements:

(1) the testimony is based upon sufficient facts or data;

(2) the testimony is the product of reliable principles and methods; and

(3) the witness has applied the principles and methods reliability to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the Supreme Court held that District Court judges must act as gatekeepers to insure that expert testimony is reliable, relevant, and helpful to the jury. Id at 597. Although Daubert itself was limited to the admissibility of scientific testimony, the Supreme Court has also held that the district court's gatekeeping responsibility applies to all expert testimony, whether or not "scientific" in nature. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). See: Jaurequi v. Carter Mfg. Co., 173 F.3d 1076 (8th Cir. 1999). The proponent of the expert testimony at issue bears the burden of showing that the testimony satisfies the requirements of FRE 702. See: Lauzon v. Senco Products, Inc., 270 F.3d 681, (8th Cir., 2001).

In order for an expert's opinion to be reliable, the expert must have "good grounds" for his or her belief. The expert's opinion, to be reliable, must be based on the scientific methods and procedures and not merely on "subjective belief or unsupported speculation." Weisgram v. Marley Co., 169 F.3d 514, (8th Cir., 1999), quoting Daubert, 509 U.S. at 590.

In assessing the reliability of an experts' methodology under Daubert and Rule 702, the trial court must consider various factors, including: "(1) whether the theory or technique 'can be (or has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and

2

publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." Peitzmeier v. Hennessy Industries, Inc., 97 F.3d 293, 297 (8th Cir., 1999), citing Daubert, at 593-94.

### b) Eighth Circuit Caselaw Applying a Daubert Analysis

In several recent decisions, courts within the Eighth Circuit have analyzed expert testimony which failed to meet the reliability standards emanating from Daubert. The courts of the Eighth Circuit routinely and regularly refuse to admit testimony from "experts" in product liability claims and claims including fire cause and origin where the testimony is based on untested "theories" or speculation where the expert has no experience with the product, or where the expert's methods of reaching and formulating and opinion fails to comport with those methods generally accepted in the expert's field.

In Weisgram v. Marley Co., 169 F.3d 514, 517-21, (8th Cir., 1999), for example, the Court vacated the trial court's decision to allow three experts to testify as to the cause and origin of a fire.[1] In the lower court action, Dan Freeman, a fire investigator with the Fargo Fire Department, Ralph Dolence, a master electrician from Ohio, and Sandy Lazarowicz, a metallurgist, all provided testimony, over the objections of counsel, that the Weisgram heater caused the fire in question. Id. at 518-522.

In explaining its decision to grant defendant judgment as a matter of law in Weisgram, the Eighth Circuit stated the following as to each expert. As to Mr. Freeman, the Fire Investigator, the court found:

> Although Freeman clearly was qualified as a fire cause and origin expert, there is no question that he was not qualified to offer an opinion that the Weisgram heater malfunctioned and he should not have been permitted to do so…

---

[1] The Weisgram court remanded to the District Court with instructions to grant Defendant judgment as a matter of law.

Freeman's testimony regarding the events that followed the surmised "runaway" amounted to nothing more than blatant speculation...Now, as a qualified expert in fire investigation, Freeman was free to testify--as he did--that the burn and smoke patterns and other physical evidence indicated that, in his opinion, the fire started in the entryway and radiated to the sofa. Freeman's further testimony, however, was patent speculation, as there was no evidence in the record regarding the location of the throw rug when the fire started, the type of vinyl linoleum on the floor, the glue used some fifteen years prior to secure the vinyl to the underflooring, or the flammability of the vinyl or the glue.

While Freeman was qualified to testify that he thought the fire originated in the area of the baseboard heater, we think the court abused its discretion when it permitted Freeman to "run away" with his own *unsubstantiated theories*: that the throw rug somehow blocked the heater, that the rug then ignited, that the heater transferred sufficient heat to the floor so that the adhesive under the vinyl flooring (an adhesive whose composition and other characteristics are unknown) "off gassed," and that the heater radiated enough heat so that those vapors--whatever they were--ignited.

Freeman's qualification as a fire investigator did not give him free rein to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support. No foundation was established for Freeman to testify to the extent he did, and the court abused its discretion in allowing the jury to hear this testimony.

Id. at 518-519. (emphasis supplied)

As to Mr. Dolence, the proposed master electrician expert witness, the Court held:

Dolence went on to conjecture that a small rug was pushed over two-thirds of the heater, that the heat was "trapped in there and was focused down on to the ... linoleum," that "volatile vapors from the adhesive come [sic] into the location of the heater," and that "[t]he ignition of those vapors is what caused this fire." And Dolence's basis for his theory? "There is no other explanation. Everything else is ruled out ... by Captain Freeman." Dolence did no testing to bolster this theory and admitted that he knew of no tests that anyone had conducted to support a similar theory of fire cause and origin. As with Freeman's testimony, there was insufficient foundation for Dolence's testimony; the ostensibly expert opinion testimony he offered was rank speculation.

In these circumstances, the District Court abused its discretion by permitting Dolence to testify as an expert witness regarding matters about which *he could only speculate*. As with Freeman's testimony, there is no reasonable factual basis for Dolence's opinions. Dolence's own testimony attests to the fact that he was offering nothing more than pure conjecture as to whether or not the Weisgram heater was defective. The testimony therefore was unreliable under Rule 702 and should have been excluded.

Id. at 519-520. (emphasis supplied).

As to Mr. Lazarowicz, the metallurgist, the Court held:

> Lazarowicz examined the thermostat contacts and the high limit control contacts from the heater and studied the same components in the Ferguson heater. He was qualified as an expert in the properties of metals. Admittedly, however, he was not an expert in fire cause and origin, in baseboard heater operation, or in the design or testing of contacts in such a unit.
>
> Lazarowicz's opinions amount to no more than "*subjective belief or unsupported speculation.*" Daubert. We conclude that the nexus between his observations of the contacts and his conclusion that the heater was defective is not scientifically sound. "[T]here is simply too great an analytical gap between the data and the opinion proffered." General Electric Co., v. Joiner, 522 U.S. 136 (1997). Therefore, his testimony was unreliable and it was an abuse of discretion to allow it.

Id. at 520-521. (emphasis supplied).

In Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, (8th Cir., 1999), the Court excluded proposed expert testimony on the alternative design of a mobile combine because of the failure to provide a basis for belief that purported expert's opinion was anything more than unabashed speculation. The Court stated:

> Willis [precluded expert] was prepared to testify that the corn head was unreasonably dangerous because it lacked awareness barriers. However, Willis has not attempted to construct or even draw the suggested device, much less test its utility as a safety device or its compatibility with the corn head's proper function. Nor has he pointed to any manufacturer that incorporates awareness barriers into corn heads or similar farming machinery. *In short, he has provided no basis for us to believe that his opinions are anything more than unabashed speculation.* We therefore hold that the district court did not abuse its broad discretion in concluding that the proffered testimony regarding the lack of awareness barriers flunked the reliability prong of Daubert.

Id. at 1084. (emphasis supplied).

In Pestel v. Vermeer Manufacturing, Co., 64 F.3d 382, (8th Cir., 1995), another alternative design case, the Eight Circuit upheld the district court's exclusion of proffered engineering testimony, citing relevant Daubert factors. The Court pointed out that the proposed

safety device had not been tested or even developed. Id. at 384. With regard to peer review, the Court noted that the expert had not consulted others in the industry or subjected the concept to any manufacturers, engineers, or professors for scrutiny, and that the plaintiff had presented no evidence regarding general acceptance. Id.

In the recent decision of Krueger v. Johnson and Johnson Professional, Inc., 2003 WL 21181816, (May, 2003) the Eighth Circuit found that the district court did not abuse its discretion when it refused to admit the testimony of two experts. The Court found that neither expert "had sufficient knowledge or experience with the design" of the product at issue "to adequately explain or validate their theories". Id. at 1.

In J.B. Hunt Transp., Inc., v. General Motors Corp., 243 F.3d 441, (8th Cir., 2001), J.B. Hunt, a trucking company, brought crashworthiness claims against General Motors, manufacturer of the automobile and component seat manufacturer, alleging that seat defects had caused passenger's injuries. The Court prevented Hunt's reconstruction expert from testifying because he had insufficient evidence to completely reconstruct the accident as he theorized, and the expertise of Hunt's "foam expert" was not allowed where testimony was highly doubtful and linked to rejected testimony of the reconstruction expert. Id. The Court added that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert". Id. at 444.

In Peitzmeier v. Hennessy Industries, Inc., 97 F.3d 293, (8th Cir., 1996), plaintiffs filed suit against defendant, alleging causes of action in strict liability and negligence, after a tire-changing-machine allegedly exploded, causing injuries. The Eighth Circuit affirmed the lower court's decision to preclude the testimony of plaintiff's witness and excluded the testimony of a

proposed expert because no testing ever took place, no peer review and no testimony regarding general acceptance was offered. Id. at 296. The Court stated:

> We first consider whether Milner's [precluded expert's] theories or techniques have been tested. In that regard, Milner concedes that he has neither designed nor tested for safety or utility any of the proposed safety devices that he claims are missing from the Hennessy tire-changing machine. His only demonstration of an alternative design is a series of rough sketches that have not been adapted into engineering drawings, much less prototypes. Milner has shown no factual basis to support an opinion that his design changes are feasible or that they would not hinder the efficacy of Hennessy's present tire-changing model. Id. at 297.

In Glastetter v. Novartis Pharmaceuticals Corp., 252 F.3d 986, (8th Cir., 2001), the Eighth Circuit affirmed the lower court's decision to exclude expert testimony that Parlodel can cause intracerebral hemorrhages because the proposed expert could not demonstrate causation to a degree of medical certainty as required by Daubert. The main Daubert factor missing in the Glastetter case was that the studies the expert relied upon were based upon an unproven premise: "Dr. Petro (precluded expert) admitted that not a single animal study had ever concluded that ICH was associated with bromocriptine." Id. at 990.

In Giles v. Miners, Inc., 242 F.3d 810, (8th Cir., 2001), the Court precluded a proposed expert from testifying based upon the expert's failure to indicate how a proposed safety guard would interact with a freezer's proper functioning, and it appeared the safety guard violated government and industry design standards requiring sanitary, easily cleanable surface.

In Turner v. Iowa Fire Equip., 229 F.3d 1202, (8th Cir., 2000) the Court prevented a proposed expert from testifying because differential diagnosis sought to identify the condition and not the cause. A treating physician's expert opinion on causation is subject to the same

standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation.

In Penney v. Praxair, Inc., 116 F.3d 330, (8th Cir., 1997), the Court held that proposed expert testimony based upon comparison of positron emission tomography scan of brain of plaintiff and control group, which demonstrated traumatic brain injury, was found inadmissible because control group could not provide accurate comparison due to differences in age and plaintiff's use of medication.

It is clear that the courts in the Eight Circuit closely scrutinize proffered expert deposition testimony to ensure that only testimony properly based on accepted scientific methods and accepted principles is admitted.

    c)    **The Methodology of Plaintiffs' Expert Bruce Wandell Fails to Meet *Daubert* Criteria as He Failed to Follow Proper Procedures in Performing a Complete Investigation Before Forming Opinions, and, in Properly Documenting Crucial Evidence Upon Which the Opinions are Based.**

As is set forth in detail in the attached motion papers, Plaintiffs' Expert, Bruce Wandell, offered opinions concerning the area of origin of the file. He expresses the opinion that notwithstanding Mr. Wandell's admission that NFPA 921 requires the scientific method be used to investigate a fire scene, Mr. Wandell did not follow a scientific method investigating the Zeiger fire scene, therefore, his testimony should be stricken as it is not the product of reliable of principles and methods, as require under rule 702 of The Federal Rules of Evidence, *Daubert*, and its prodigy.

As is set forth in detail in the motion papers submitted herewith, Mr. Wandell has accepted NFPA 921, Guide for Fire and Explosion investigations as the guide developed by the Technical Committee of fire investigations as an accepted guideline for the conduct of fire and explosions investigations and that the provisions of NFPA 921 require a fire investigator to approach a fire scene without a preconceived hypothesis. The guidelines, further, require that until that has been collected, no specific hypotheses can be reasonably formed or treated. Mr. Wandell, conversely, formulated an opinion regarding the origin of the fire, before he completed his investigation of the fire, after he heard from one of his co-workers that there had been a product recall in the Power Wheels toy. Thereafter, Mr. Wandell formulated the opinion that the fire originated in the north wall of the garage where the Power Wheels vehicle was located.

As is indicated in the motion papers Mr. Wandell improperly terminated his investigation and information gathering following the formation of his opinion. Mr. Wandell failed to make inquiries as to the materials that may have been located on the other walls of the garage.

Mr. Wandell claimed, at his deposition, that his opinion that the fire originated at the north wall of the garage is supported by his claimed observation that the north wall of the garage was more heavily damaged than the south wall of the garage. This expression of opinion is both in contrast to the evidence and demonstrates a complete disregard for the principles and method set forth in NFPA 921. NFPA 921 requires persons who will be expressing opinions relative to fire scene cause and origin to record the scenes in medium that will allow an investigator to recall his or her observations at a later date and

to document the conditions of the scene. If Mr. Wandell properly followed the requirements of NFPA 921, and formed an opinion at the scene of the fire that the north wall of the garage was more heavily damaged than the south wall of the garage, NFPA 921 would have required him to document this observation by notes, photographs and diagrams.

In contrast to this requirement of NFPA 921, Mr. Wandell admitted that he took one single photograph of the south wall which, in fact, Mr. Wandell admitted showed the wall to be no longer standing, with all wooden two by four studs and concrete blocks and no evidence of any unburned wood. Mr. Wandell, conversely, admitted that he took no less than thirteen photographs of the north wall of the garage. He admits that virtually all of the photographs of the north wall show that some of the wood members of the north wall garage are still standing, and that the majority of the photographs show unburned wood in the members of the north wall. Mr. Wandell's expression of opinion that the north wall of the garage was more heavily damaged than the south wall of the garage both contradicts what he admits is shown in his own photograph and further, most importantly, establishes that Mr. Wandell's methods, failed to document and photograph conditions that he believes are to a pivotal to support his expression of opinion, in total disregard for the requirements of the scientific methods set forth in NFPA 921.

In his deposition, Mr. Wandell, further, claimed that the tires of a Ford Explorer Vehicle located in the garage were more damaged on the north side than the south side. He admits, however, that this opinion and recollection is not noted anywhere in his written report, and that this testimony is based on "memory." Ignoring the fact that the

10
Case 3:01-cv-03089-PAZ  Document 96-2  Filed 06/16/03  Page 10 of 13

only photographs that show the tires of the Ford Explorer vehicle were those taken by Fisher-Price's expert Mr. Finneran, which show more damage on the south side of the vehicle than on the north side, and ignoring the credibility issues inherent in this sudden undocumented recollection, the fact remains that Mr. Wandell simply failed to follow appropriate procedure set forth in NFPA 921 and accepted as the guideline for those who have responsibility for fire investigation in failing to provide any documentation or photographs whatsoever of this condition. In this type of expression of opinion, following an investigation in which the methods and guidelines set forth in NFPA 921 have clearly not been followed, is precisely the type of non-reliable, non-scientifically based opinion testimony which the court must preclude under *Daubert* and The Federal Rules of Evidence 702.

Mr. Wandell's methods, further, present stark violations of the investigation requirements of NFPA 921, which he agrees is the accepted guide of fire investigation. Mr. Wandell failed to ascertain the contents of the garage, and even failed to ascertain the contents of the area along the north wall, where he claims the fire originated. He admits that he found the electrical outlet that Mrs. Zeigler claimed the charger was plugged into but admits that no charger was ever recovered and nothing that looked like the remains of a charger was ever recovered. He admits that he found wiring that would have been in the north wall of the garage which he "ruled out" as source of ignition but he did not photograph the condition of the wire or preserve the wire in any fashion to support this contention. He testified that he was able to identify a wagon along the north wall of the garage and some boxes but he could not identify the contents of any of the boxes and did not make any inquires to Mrs. Zeigler as to other items that may have been on the south

wall or west wall of the garage. Clearly despite that the clear principles of scientifically based fire investigation set forth in NFPA 921 require the thorough investigation and documentation of the fire scene, these efforts apparently were abandoned following Mr. Wandell's formulation of his opinion that the Power Wheels toy which had been involved in the recall was in the area of fire origin.

### c) Conclusion

Notwithstanding that Mr. Wandell accepts that the principles of the scientific methods set forth in NFPA 921, his formulation of an opinion prior to the conclusion of his investigation, his failure to have any supporting documentation or photographs of the crucial evidence upon which his opinions are based, and his failure to have his opinions grounded in procedures that followed the methods set forth in NFPA 921 render his testimony unreliable and without the requisite scientific basis for admission under The Federal Rules of Evidence Section 702 and *Daubert*. Mr. Wandell's testimony must be precluded.

Dated: Buffalo, New York
June 13, 2003

Respectfully submitted,

WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, Iowa 50309-4195
Telephone: (515) 288-6041
Fax: (515) 246-1474
E-Mail: Reynolds@whitfieldlaw.com

Kevin M. Reynolds PK0004634

ATTORNEYS FOR DEFENDANT
Fisher-Price, Inc.

and

Cheryl A. Possenti, Admitted *Pro Hac Vice*
GOLDBERG SEGALLA LLP
120 Delaware Avenue, Suite 500
Buffalo, New York 14202
Telephone: (716) 566-5400
Fax: (716) 566-5401

By: _____
Cheryl A. Possenti NY Bar #1844174

ATTORNEYS FOR DEFENDANT
Fisher-Price, Inc.

Copy to:

Stephen F. Avery
Cornwall, Avery, Bjornstad & Scott
407 Grand Avenue, P.O. Box 999
Spencer, Iowa 51301
ATTORNEY FOR PLAINTIFF
86058

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was service upon all parties to the above cause or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on June __14__ 2003 by U.S. Mail

_____